IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-cr-20044 |
| ) | |
| DAVID LEWIS, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO SUPPRESS**

Defendant, David Lewis, by and through his attorney, ELISABETH R. POLLOCK of the Federal Defender's Office for the Central District of Illinois, in support of his motion to suppress the evidence derived from an unlawful detention and search on February 8, 2017, states as follows:

**I.   Underlying Facts**

On February 8, 2017, David Lewis was walking in the neighborhood of 1219 Sherman Street in Danville, Illinois. He was familiar with the residents of that home, saw that their vehicles were present, and when he saw that the door was ajar at the residence, he approached to borrow a lighter to light a cigarette. As Mr. Lewis walked towards the house, two police officers emerged from the residence and approached him. Incidentally, the officers were there as part of an unrelated drug investigation and had just finished conducting a consent search of the premises. The officers in question, VMEG agents Benschneider and Bowman, were wearing police vests, tactical gear, and were armed.

1

The agents asked Mr. Lewis what he was doing on the property, and Mr. Lewis replied that he was looking for a light for his cigarette. While asking him this question, one of the agents took a position directly behind him, effectively blocking him from leaving the front yard of the residence. The agents then asked him what his name was; Mr. Lewis told them he had an ID, and handed them his identification. Bowman looked at the ID, which was from Kentucky, handed it to Benschneider, and then asked Mr. Lewis "do you mind if we search you." Mr. Lewis replied, "yes, I mind, search me for what?"

Bowman then pulled out his firearm, identified himself and Benschneider, and informed Mr. Lewis that they were conducting a drug investigation and that he was now a part of it; he then informed Mr. Lewis that he was going to search him with or without his consent. Mr. Lewis put his hands up and asked "I can't just leave?" to which the agent replied, "no, it's too late for that." While held at gunpoint, the other agent conducted a search of Mr. Lewis's pockets, whereupon a small amount of cocaine was discovered in his pants. The agent then asked Mr. Lewis if he had anything else on his person because they would "find it anyway," and he stated that he had a firearm in his sweatshirt. The agents then radioed into the house and called for backup, whereupon another agent (DEA) emerged from the residence. Agents then removed the firearm. After the search, Mr. Lewis was placed under arrest and the agents ran his name through the system, whereupon it was discovered that he had outstanding warrants from Vermilion County.

**II.     Statement of Law**

There are different standards of law to evaluate the validity of investigatory stops as compared to frisks. This separate standard is necessary to protect the public from frisks, which are "a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment." *United States v. Williams,* 731 F.3d 678, 686 (7th Cir. 2013) (quoting *Terry v. Ohio,* 392 U.S. 1, 17 (1968)).

Regarding brief investigatory stops, police officers may detain a suspect if they have a "reasonable suspicion based on articulable facts that a crime is about to be or has been committed." *Williams,* 731 F.3d at 683 (citing *United States v. Carlisle,* 614 F.3d 750, 754–55 (7th Cir. 2010)). This requires "more than a hunch but less than probable cause." *Id.,* quoting *Jewett v. Anders,* 521 F.3d 818, 823 (7th Cir.2008). To find that reasonable suspicion existed to justify a stop, a court must examine the totality of the circumstances in the situation at hand, in light of the individual officers' own training and experience, and should uphold the stop if it finds that "the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." *Id.,* at 683-84, quoting *United States v. Arvizu,* 534 U.S. 266, 273 (2002).

To conduct a frisk of a person, the officer must be able to point to articulable facts that would establish the separate and specific condition that the detainee has a weapon or poses some danger. *Id* at 686. In other words, an officer performing a *Terry* stop may not automatically frisk the individual subject to the stop; rather, to do so, the officer must have some articulable suspicion that the subject is "armed and dangerous." *Id.,* citing *Arizona v. Johnson,* 555 U.S. 323, 323 (2009).

3

Probable cause to search a residence does not automatically extend to all persons who may come on the scene. *Gregory v. Oliver,* 226 F.Supp.2d 943, 948 (N.D.Ill. 2002). Additionally, a person's mere propinquity to others independently suspected of criminal activity cannot give rise to probable cause to search that person without more evidence. *Ybarra v. Illinois,* 444 U.S. 85, 91 (1979). "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places." *Id.*, quoting *Rakas v. Illinois*, 439 U.S. 128, 138-43 (1978) and *Katz v. United States,* 389 U.S. 347, 351-52 (1967).

### III.  Argument

#### A.  Mr. Lewis was seized within the meaning of the Fourth Amendment

A person has been "seized" within the meaning of the Fourth Amendment if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *United States v. Tyler,* 512 F.3d 405, 409-10 (7th Cur. 2008) (quoting *Michigan v. Chesternut,* 486 U.S. 567, 573 (1988); *United States v. McCarthur,* 6 F.3d 1270, 1275 (7th Cir.1993)). "Determining whether a seizure has occurred is a highly fact-bound inquiry, but the following are relevant factors: whether the encounter took place in a public place or whether police removed the person to another location; whether the police told the person he was not under arrest and was free

4

to leave; whether the police informed the person that he was suspected of a crime or the target of an investigation; whether the person was deprived of identification or other documents without which he could not leave (such as a driver's license or train or airline ticket); and whether there was any limitation of the person's movement such as physical touching, display of a weapon, or other coercive conduct on the part of the police that indicates cooperation is required." *Id.* at 410, citing *McCarthur*, 6 F.3d at 1275–76.

In the present case, Mr. Lewis was flanked by two officers, one with his weapon drawn, and informed that he could not leave the premises even upon his verbal request. This clearly indicates that Mr. Lewis was seized within the meaning of the Fourth Amendment.

> **B.** **Both the initial seizure and the subsequent search of Mr. Lewis's person were conducted without reasonable suspicion, and certainly without probable cause, and therefore violated the Fourth Amendment.**

The reasonable suspicion standard is a lower bar than the probable cause standard necessary for an arrest, but the police are not entitled to detain a person for questioning based on only a hunch. *United States v. Lopez,* 907 F.3d 472, 478 (7th Cir. 2018), citing *Terry*, 392 U.S. at 22, and *United States v. Wimbush*, 337 F.3d 947, 949–50 (7th Cir. 2003). Since the "Fourth Amendment proceeds as much by limitations upon the scope of governmental action as by imposing preconditions upon its initiation," the lower bar governing *Terry* stops requires that the scope of these stops be narrower than situations justified by probable cause. *Id.*, citing *Terry*, 392 U.S. at 28–29. More specifically, a *Terry* stop violates the Constitution when an officer "prolongs the stop, absent the reasonable suspicion ordinarily demanded" by the Fourth Amendment. *Id.*,

5

citing *Rodriguez v. United States*, --- U.S. ----, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492 (2015). When the reasonable suspicion justifying the stop evaporates, the stop must end. *Id.* Further, the officer's "reasonable suspicion" must be something more than just nervousness. "Most people, when confronted by a police officer, are likely to act nervous, avoid eye contact, and even potentially shift their bodies as if to move away from the area, thus making such behaviors of very little import to a reasonable suspicion determination." *Williams,* 731 F.3d at 687 citing *United States v. Broomfield,* 417 F.3d 654, 655 (7th Cir.2005).

What we blandly call "*Terry* stops" can be highly intrusive. When combined with a frisk, a *Terry* stop first deprives a person of liberty and then involves "a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons ... performed in public by a policemen while the citizen stands helpless, perhaps facing a wall with his hands raised." *Terry*, 392 U.S. at 16–17, 88 S.Ct. 1868. That's not just "a petty indignity," but "a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." *Id.* at 17, 88 S.Ct. 1868.

In the present case, there was absolutely no reason to suspect that Mr. Lewis had any involvement in criminal activity, nor that he was in the process of committing a crime. First, Mr. Lewis had no connection to the residence whatsoever. In *Michigan v. Summers,* 452 U.S. 692, 704-05 (1981), the Supreme Court found that police are justified in detaining an *occupant* of a residence that is being searched pursuant to a lawful search warrant. Specifically, the Court found that if "the evidence that a citizen's

6

residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705. Here, Mr. Lewis was not only not a resident of the house, but the search was being conducted pursuant to the resident's consent and not pursuant to a search warrant. Therefore, the fact that the search had occurred did not constitute a reason to detain Mr. Lewis.

Unlike the defendant in *United States v. Howard*, 729 F.3d 655, 659 (7th Cir. 2013), who was justifiably detained where the police were making a dangerous arrest for a violent crime involving a gun, there was no reason to secure Mr. Lewis at the residence in question. First, he was not "with" the residents of the house, but rather had approached the residence to find a lighter *after* the search had concluded. Second, the residence was not being searched pursuant to probable cause to believe a violent crime had occurred, but rather was being search by *consent* due to the possible presence of drugs. In *Howard*, the Seventh Circuit specifically recognized that it had "previously held that similar detentions of bystanders violated the Fourth Amendment when the police did not have probable cause to believe the target of the arrest or search had committed a violent crime or was otherwise dangerous." *Id.* At 660, citing *Baird v. Renbarger*, 576 F.3d 340, 344–45 (7th Cir. 2009) (unreasonable for police officer to point submachine gun at compliant

bystanders when executing search warrant involving nonviolent crime where there was no known threat to safety and no one tried to resist or flee; distinguishing cases finding such conduct reasonable when danger to police was supported by probable cause); *Jacobs v. City of Chicago,* 215 F.3d 758, 773–74 (7th Cir. 2000). The only reason that the search of the defendant in *Howard* was justified was because there were specific reasons to think that the target may have been armed and dangerous which "distinguish[es] these and other similar cases." *Id.*

Even when a *Terry* stop is justified, whether a frisk is also justified is a separate question. *Arizona v. Johnson*, 555 U.S. at 326–27; *United States v. Thompson*, 842 F.3d 1002, 1007 (7th Cir. 2016). The authority to frisk is not automatic in a drug investigation. For a frisk to be lawful, it must be based on reasonable suspicion that "criminal activity may be afoot and that the persons with whom [the officer] is dealing may be armed and presently dangerous." *Terry*, 392 U.S. at 30, 88 S.Ct. 1868. Even if an initial stop is justified, it may "last no longer than is necessary to effectuate" its purpose. *Lopez,* 907 F.3d at 486, citing *Rodriguez v. United States*, --- U.S. ----, 135 S.Ct. 1609, 1614 (2015) "A person stopped on reasonable suspicion must be released as soon as the officers have assured themselves that no skullduggery is afoot. Probable cause, by contrast, justifies a custodial arrest and prosecution, and arrests are fundamentally different from *Terry* stops." *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) (en banc).

Any citizen could have walked up to the front porch of 1219 Sherman Street in search of a light. The fact that the resident of the home had let police in to search did not create a sufficient level of suspicion to justify the detention and search of that citizen. In

fact, it is an utterly distinguishable situation from cases like *United States v. Pace,* 898 F.2d 1218, 1240 (7th Cir. 1990), where the Seventh Circuit recognized that it is "incredible that [a drug dealer] would have a person accompany him to a drug deal ... where that person did not have [the dealer's] utmost trust and confidence." *Id.*, citing *United States v. Perry,* 747 F.2d 1165, 1169 (7th Cir. 1984). It is "common-sense intuition" and is "sufficient to at least give rise to a reasonable suspicion (if not probable cause) that the person present during the deal is somehow involved in the deal." *Id.* In this case, there was absolutely no indication that Mr. Lewis was involved in drug activity or connected to the residence in question. As such, there was not reasonable suspicion to detain or search him and all evidence obtained from that unlawful detention should be suppressed.

WHEREFORE, Mr. Lewis respectfully requests that this Court set an evidentiary hearing on this matter, and that post-hearing, the parties be given the opportunity to present Proposed Findings of Fact and Conclusions of Law incorporating the testimony and evidence presented at said hearing, whereupon this Court should suppress any evidence or statements obtained from Mr. Lewis in violation of the Fourth Amendment.

Respectfully submitted,
DAVID LEWIS, Defendant

/s/ Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
(217) 373-0666
(217 373-0666 FAX
Elisabeth_Pollock@fd.org

9

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
(217) 373-0666
(217 373-0666 FAX
Elisabeth_Pollock@fd.org